UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                    :
ROSA A. NUNEZ,                                                       :
                                                                    :
                                    Plaintiff,                       :          14-CV-6647 (JMF)
                                                                    :
            -v-                                                      :          OPINION AND ORDER
                                                                    :
NEW YORK STATE DEPARTMENT OF                                         :
CORRECTIONS AND COMMUNITY SUPERVISION,                              :
et al.,                                                              :
                                                                    :
                                    Defendants.                      :
                                                                    :
---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  07/31/2015

JESSE M. FURMAN, United States District Judge:

Plaintiff Rosa Nunez ("Plaintiff"), proceeding *pro se*, brings this action against her employer, the New York State Department of Corrections and Community Supervision ("DOCCS"), and her former supervisor, Joseph Lima (collectively, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Title 42, United States Code, Section 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code, Section 8-101 *et seq.*[1]  Plaintiff alleges, among other things, that Lima subjected her to unwanted romantic advances and that, when she refused to engage with him socially and later filed an internal complaint, Lima and her co-workers both retaliated against her and created a hostile work environment.  Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6)

---

[1]       Although the first paragraph of the Amended Complaint (the "Complaint") references the NYSHRL (*see* Am. Compl. (Docket No. 3) ¶ 1), the claims for relief cite only Title VII and the NYCHRL (*id.* ¶¶ 170-86).  Given that Plaintiff is *pro se*, the Court will analyze her claims under all three laws.

of the Federal Rules of Civil Procedure.  For the reasons that follow, Defendants' motion is

GRANTED in part and DENIED in part.

## BACKGROUND

The following facts, taken from the Complaint and documents attached thereto, are

assumed to be true for the purposes of Defendants' motion to dismiss.  *See Karmely v.*

*Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013).  Plaintiff was hired by DOCCS (which, at that

time, was known as the New York State Division of Parole) in 1992.  (Am. Compl. ¶ 17).

Around the time of the events giving rise to this lawsuit, Plaintiff was a parole officer; her main

responsibilities included supervising a caseload of paroled sex offenders and working closely in

partnership with other parole officers.  (*Id.* ¶¶ 13, 18).  Plaintiff alleges that she "was a

responsible and reliable employee who often received praise for her good work."  (*Id.* ¶ 19).

### A.  Lima's Overtures to Plaintiff

In September 2010, Lima was — and had been for many years — Plaintiff's supervisor.

(*Id.* ¶ 20).  Around that time, he invited Plaintiff to see the movie "The Black Swan."  (*Id.*).

Plaintiff, believing Lima's request "be a friendly invitation from a colleague and not . . . a[n]

invitation to go on a date," nevertheless declined the invitation because she had heard that there

was sexual content in the movie and did not feel that it was appropriate to see it with Lima.  (*Id.*

¶ 21).  Lima "understood . . . Plaintiff's concerns," but continued, over the next few months, to

invite her to attend plays and movies with him, causing her discomfort because of their

supervisor-supervisee relationship.  (*Id.* ¶¶ 21-22).  In December 2010, after Lima insisted that

"he only wanted company," Plaintiff finally agreed to go to the movies with him — a decision

that she asserts was due to pressure she felt to accept his invitation because he was a supervisor.

(*Id.* ¶ 22).  Even then, Plaintiff still did not have any reason to suspect any romantic intention in

the invitations, as Lima "had always been respectful towards her in the past" and was married. (*Id.* ¶ 23).

From January to May 2011, Plaintiff and Lima went on four outings together, during which Lima did not make any romantic advances towards Plaintiff.  (*Id.* ¶¶ 23-24).  On or about May 11, 2011, however, Lima invited Plaintiff to lunch and declared that he was "infatuated" with her.  (*Id.* ¶ 26).  Plaintiff told Lima that she did not reciprocate his feelings and that, in light of his confessions, she did not feel comfortable going on social outings alone with him.  (*Id.* ¶¶ 27-28).  Lima asked Plaintiff is she intended to sue him; she responded that she would proceed with a lawsuit only if Lima continued to pursue her, knowing that she was not interested. (*Id.* ¶ 29).  Despite that conversation, Lima continued to ask Plaintiff to attend plays with him, and became more and more insistent with each invitation.  (*Id.* ¶ 30).  Indeed, on or about June 20, 2012, Lima called Plaintiff and told her that, if she did not go on two dates with him, he would make her perform the unnecessary and time-consuming task of going to a Verizon store and transferring her contacts to a new, state-issued Blackberry mobile phone.  (*Id.* ¶ 31). Plaintiff declined to go out with Lima despite his threat, and began to avoid contact with Lima except with respect to work-related issues.  (*Id.*).  It was at this point, Plaintiff alleges, that Lima began retaliating against her because she rejected his advances.  (*Id.* ¶ 32).

## B.  Lima's Retaliatory Conduct Towards Plaintiff

Plaintiff alleges that Lima retaliated against her on many occasions, mostly by increasing her workload, changing her work environment, and giving her less favorable assignments.  In September 2012, for example, Lima transferred Plaintiff from a standard two-person partnership — with someone with whom she had a good working relationship — to a three-person partnership.  (*Id.* ¶¶ 33-34).  When she complained, however, Lima transferred Plaintiff back to

the two-person arrangement.  (*Id.* ¶ 34).)  Additionally, when a parole officer is on leave, it is standard practice for a supervisor to split his or her caseload in assigning coverage, but when Plaintiff's partner was on leave and performing only light duty for five months — from November 2012 to April 2013 — Lima, along with Plaintiff's immediate supervisor, Senior Parole Officer ("SPO") Miguel Medina, refused to distribute her partner's caseload, forcing Plaintiff "to take on additional reports and do extra paperwork for two very intensive mental health caseloads."  (*Id.* ¶ 35).

Lima's retaliation towards Plaintiff, she alleges, also affected her ability to transition from one type of caseload to another — as well as the cases she was assigned before and after she transitioned.  Plaintiff initially requested a Special Offenders Unit ("SOU") caseload in January 2013, but Lima offered her only a shelter caseload (presumably involving supervising parolees in homeless shelters around New York City), which was less desirable and consisted of cases she was not accustomed to covering.  (*Id.* ¶ 50).  Plaintiff decided to postpone accepting the caseload until a non-shelter caseload became available — which took five months, until June 2013, despite the fact that less senior colleagues had SOU caseloads comprised of parolees in regular housing.  (*Id.* ¶¶ 50, 65).  While she awaited her SOU assignment, Plaintiff was assigned to manage a parolee who had displayed repeated verbal and physical hostility towards women. (*Id.* ¶ 66). (When Plaintiff informed Medina and another SPO of the perceived risk she faced in being assigned the case, however, the case was reassigned.  (*Id.*).)  She also alleges that she was intentionally reassigned cases that, largely because of the timing of the transfer or because of continuing obligations on the part of the parolee to report to the parole officer previously assigned to the case, would make Plaintiff appear to be noncompliant with the required monthly home visits.  (*Id.* ¶¶ 67-68, 130-31).  When Plaintiff requested a copy of a printout of her

compliance with monthly visits from Lima and SPO Medina (presumably to ensure that she had not been incorrectly found noncompliant with a monthly visit that was the responsibility of another parole officer), her request was denied without explanation. (*Id.* ¶¶ 68-69).

Additionally, Plaintiff alleges that, before and after she took on an SOU caseload, Lima increased her workload, in ways that deviated from standard practice. Lima, for example, repeatedly reassigned Plaintiff cases that were more difficult and covered precincts with which Plaintiff was less familiar, including cases that had been managed by Parole Officer ("PO") Tiffany Grissom rather than by PO David Segal, who covered cases in Plaintiff's preferred precinct. (*See id.* ¶¶ 36-39, 41-49). Plaintiff alleges that Lima's decisions not only forced her to handle cases that she otherwise would not have covered, but also caused her to "los[e] out on potential income," apparently by depriving her of overtime she would have earned had she been assigned PO Segal's cases. (*Id.* ¶¶ 41-43). (At another point in the Complaint, however, Plaintiff appears to allege that DOCCS would not have had to incur overtime expenses if it had assigned PO Segal's cases to her. (*Id.* ¶ 49).) Plaintiff acknowledges that Lima assigned many of the cases she received in unfamiliar precincts because he had reorganized the assignment of precincts for the SOU, but alleges that Lima — who initiated this reorganization as Plaintiff took on a SOU caseload — deliberately "changed the coverage of territory . . . so that the precincts Plaintiff did not normally cover and was not obligated to cover due to her seniority, were now included in her area of coverage." (*Id.* ¶¶ 44-46). She also alleges that Lima did not review PO Grissom's cases before assigning them to her, contrary to standard practice; Plaintiff informed Lima that she believed that this was "yet another form of retaliation towards her and requested that [Lima] please stop immediately, since Plaintiff was hoping to avoid filing a formal complaint." (*Id.* ¶¶ 38, 48).

Further, Plaintiff alleges that the SOU cases Lima assigned her "had major problems." (*Id.* ¶¶ 51-54). Plaintiff asserts, for example, that many of the offenders whose cases she was assigned had a pre-delinquent status, resided outside of Plaintiff's coverage area, were not referred to sex offender treatment despite being under supervision for over a year, or were not living in housing compliant with the Sexual Assault Reform Act. (*Id.* ¶¶ 51, 53). When Plaintiff expressed concern to Lima about these problematic cases, he replied that they had been assigned to her as part of a "bulk transfer," contradicting a prior statement that he would review cases before assigning them to her. (*Id.* ¶ 52). Plaintiff further alleges that, even after she had been assigned to the SOU, Lima deliberately assigned her mental health cases — cases she had handled under her old caseload. (*Id.* ¶ 55).

On July 11, 2013, Plaintiff initiated an internal DOCCS investigation of Lima's treatment of her and, on July 23, 2013, filed a formal complaint with the DOCCS Office of Diversity Management. (*Id.*, Ex. 1 at 49, 58-63). Plaintiff alleges that, around the same time, Lima subjected her to other retaliatory acts, including reassigning her cubicle (and, it should be noted, other parole officers' cubicles) to accommodate case managers visiting the office once a week and directing his secretary to order Plaintiff to move her car in order to accompany an SPO visiting the office. (Am. Compl. ¶¶ 56-58).

On October 2, 2013, Plaintiff also filed a complaint with the New York State Division of Human Rights ("NYSDHR"), accusing Lima of sexual harassment and retaliation. (*Id.*, Ex. 1 at 30-42). In the year that followed, Lima required Plaintiff to attend a morning training session instead of an afternoon session (he had also prevented Plaintiff from attending the training of her choice several months earlier, by saying a session was full); denied Plaintiff's request for reimbursement for travel expenses, the first time that this had occurred to Plaintiff in her time

working at DOCCS; manipulated Plaintiff's schedule by, among other things, not preventing his secretary from scheduling her to work at the same time as the department's monthly meetings; and — with SPO Medina — did not timely process a report she filed in one of her cases, which made it appear as if she had been tardy in submitting the report in the first instance. (*Id.* ¶¶ 40, 59-60, 62-64, 70-72).

## C.  Retaliation and Hostile Treatment from Plaintiff's Co-Workers

In addition to her allegations against Lima, Plaintiff alleges that many of her other co-workers — none of whom are named as Defendants in this suit — subjected her to retaliation and a hostile work environment.  She alleges, for example, that her relationship with SPO Medina, her supervisor, deteriorated once she indicated that she was going to file a formal complaint against Lima and that SPO Medina took actions after she filed a complaint that indicated he "had an issue" with her.  (*Id.* ¶¶ 76-78).  She alleges, for example, that SPO Medina transferred Plaintiff, without telling her, the case of a parolee who had absconded and recently been caught, shortly before she left for annual leave; intentionally held on to a check past due to Plaintiff while she was on leave, insisting that he would drop it off to her personally rather than mailing it; waited a week to collect signatures for a get-well card after Plaintiff returned from leave, which allegedly departed from the courtesy shown to other parole officers in similar circumstances; and generally was unhelpful and nonresponsive when she confronted him with a scheduling or case-specific issue.  (*Id.* ¶¶ 82-83, 86, 88-90).  Plaintiff also alleges that, after she reported to SPO Medina that a female parole officer was romantically involved with a female offender that Plaintiff had previously supervised, he made disparaging comments implying that Plaintiff was a lesbian and that she was the parole officer romantically involved with the parolee,

making her "strongly believe" that SPO Medina had initiated a Bureau of Special Services investigation of her.  (*Id.* ¶¶ 79-81).

Plaintiff contends that, around the same time, she also began experiencing hostility from PO Grissom — hostility that she attributes to "major issues" she encountered in the cases that Lima had transferred from PO Grissom to her.  After Plaintiff discovered, for example, that one offender formerly assigned to PO Grissom had not been living in his approved residence for over three months, Plaintiff "had to complain" — and faced hostility and gossip as a result.  (*Id.* ¶¶ 93-95).  PO Grissom spread rumors about Plaintiff and her behavior at social events; asked "Is this sexual harassment?" when referring to a video of Plaintiff dancing with Lima at a work event in 2011; and made veiled threats toward Plaintiff, including by stating "You will see when she finds smoke on her car."  (*Id.* ¶¶ 97-100).

Further, Plaintiff alleges that several other co-workers subjected her to disparaging comments — some, again, that Plaintiff attributes to her decision to initiate a complaint against Lima.  PO Michael Lesser, for example, made a disapproving statement about false accusations in the sexual assault context, a statement that Plaintiff believes was directed at her.  (*Id.* ¶ 106).  Plaintiff also alleges that PO Lesser "constantly spoke negatively about Plaintiff to other colleagues . . . , ignored Plaintiff on several occasions, rarely spoke to her and often did not reply to her greetings."  (*Id.* ¶ 109).  PO Segal falsely claimed to other co-workers that he had "been intimate" with Plaintiff (a claim that he also made with respect to other female co-workers), which she alleges was "a deliberate act to destroy her good name."  (*Id.* ¶¶ 113-14).  In April 2014, Parole Revocation Specialist ("PRS") Elaine Kallinikos implied that Plaintiff had taken a cell phone confiscated from an ex-offender, when PRS Kallinikos in fact later found the phone in her own home.  (*Id.* ¶¶ 116, 118).

Plaintiff contends that her co-workers' hostile acts were not limited to comments or stares; instead, her co-workers deliberately attempted to sabotage the investigation into Lima's conduct.  For example, Plaintiff noticed, prior to filing her complaint against Lima, that her car keys were missing and, in the following months, that several of her day books — some of which recorded comments and threats made by Lima — were missing.  (*Id.* ¶¶ 122-25).  Plaintiff also alleges that several documents — which she had printed to prove that Lima's reassignment to her of several of PO Grissom's cases was unfair — were stolen from the trunk of her car.  (*Id.* ¶¶ 128-29).

## D.  DOCCS' Investigation of Lima and Violations of Confidentiality

Citing comments made in the office by her colleagues, Plaintiff alleges that the administrative investigation into Lima's misconduct was "mishandled."  (*Id.* ¶ 135).  In particular, Plaintiff believes that DOCCS' internal investigation was one-sided insofar as it failed to give her an adequate opportunity to present her side of the story while crediting evidence and co-worker interviews favorable to Lima and that SPO Medina or Lima coached witnesses to provide investigators with information favorable to Lima.  (*Id.* ¶¶ 139-44).  Plaintiff also avers that DOCCS failed to take appropriate action to protect her from further retaliation and harassment, including by refusing to transfer Lima.  (*Id.* ¶¶ 146-47).  Finally, Plaintiff "strongly believes" that DOCCS contacted both therapists who had been treating her and attorneys who had worked with her but then withdrew from her case.  (*Id.* ¶¶ 149-52).

Plaintiff alleges that her experiences at DOCCS have taken a toll on her mental health. Since the beginning of her ordeal with Lima and her other co-workers, she has suffered from major depressive disorder, anxiety, and insomnia, and has also experienced repeated panic attacks.  (*Id.* ¶¶ 156-57).  Due to the "stress and panic attacks," she also found herself unable to

study for — and thus take — the SPO exam scheduled for March 2014.  (*Id.* ¶ 158).  Overall,

Plaintiff "felt and continues to feel offended, disturbed, and humiliated by Defendants'

retaliatory harassing conduct and the hostile work environment [Lima] has subjected the Plaintiff

to."  (*Id.* ¶ 161).  Plaintiff brings claims of sexual harassment, hostile work environment, and —

liberally construed — retaliation under Title VII, the NYSHRL, and the NYCHRL, and seeks

declaratory relief along with compensatory and punitive damages.  (*Id.* ¶¶ 170-86).[2]  Plaintiff's

Title VII claims are brought against only DOCCS (as there is no individual liability under Title

---

[2]      The Court granted Plaintiff leave to submit a sur-reply, which she filed on May 4, 2015.
(Docket Nos. 16, 17).  In that filing, Plaintiff appears to raise various claims for the first time.
(*Compare, e.g.*, Am. Compl. ¶¶ 170-86, 189 (mentioning mental and emotional injury only as
part of the injuries suffered as a result of Defendants' discriminatory and retaliatory conduct
under Title VII and the NYCHRL), *with* Pl.'s Sur-Reply (Docket No. 17) 6 (asserting that
"pursuant to New York State law, defendants' treatment of her constituted intentional and
negligent infliction of emotional distress.")).  Although "claims alleged for the first time in [a
*pro se* plaintiff's] motion papers" should be considered to the extent they "could have been
asserted based on the facts alleged in the complaint," *Vlad-Berindan v. MTA NYC Transit*, No.
14-CV-675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014), the Court will not
consider claims that are based on new factual allegations in Plaintiff's sur-reply, given that they
could have been (and were not) raised in the (otherwise exhaustive) Complaint, the complaint
originally filed with this Court, the complaint filed with the NYSDHR, the internal complaint
filed with DOCCS, and Plaintiff's initial opposition to Defendants' motion.  *See Pandozy v.
Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007) (declining to consider new claims raised in
a *pro se* plaintiff's opposition papers), *aff'd*, 340 F. App'x 723 (2d Cir. 2009).  In any event, the
Complaint fails to state a claim for either negligent or intentional infliction of emotional distress,
as (1) New York Workers' Compensation Law generally provides the exclusive remedy for
injuries resulting from negligence in the workplace; (2) Plaintiff does not allege that Defendants
owed her a duty of care, as required for a claim of negligent infliction of emotional distress; and
(3) Plaintiff has not demonstrated that Defendants' "behavior was so outrageous that it exceeded
all bounds of decency as measured by what the average member of the community would
tolerate," as required to state a claim for either intentional or negligent infliction of emotional
distress under New York law.  *See, e.g.*, *Hayles v. Advanced Travel Mgmt. Corp.*, No. 01-CV-
10017 (BSJ) (DFE), 2004 WL 26548, at *15 (S.D.N.Y. Jan. 5, 2004)  (dismissing claims for
negligent and intentional infliction of emotional distress against the plaintiff's former employer
and various supervisors and co-workers); *Wilson v. City of N.Y.*, 743 N.Y.S.2d 30, 34 (2002)
(discussing the standard for negligent infliction of emotional distress).

VII), whereas her NYSHRL and NYCHRL claims are brought against both Lima and DOCCS. (Am. Compl. ¶¶ 170-86).  None of Plaintiff's other co-workers is named as a defendant.

**LEGAL STANDARDS**

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.,* and cannot rely on mere "labels or conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.* at 570.

*Twombly* and *Iqbal* notwithstanding, the Supreme Court has held that, to survive a motion to dismiss, "a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).  Last year, the Second Circuit clarified that *Swierkiewicz* has continued viability "as modified by *Twombly* and *Iqbal*," meaning that at the motion to dismiss stage in a discrimination suit, a plaintiff "need not allege facts establishing each element of a prima facie case of discrimination," but the complaint "must at a minimum

assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotation marks omitted).  In applying *Twombly* and *Iqbal* to employment discrimination claims, courts in this Circuit have further held that the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of N.Y.*, No. 09-CV-5916 (LTS) (KNF), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).  Thus, a court must dismiss a claim of employment discrimination if the plaintiff "fail[s] to allege even the basic elements of a discriminatory action claim." *Patane v. Clark*, 508 F.3d 106, 112 n.3 (2d Cir. 2007).  Further, "[n]aked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Sanders-Peay v. NYC Dep't of Educ.*, No. 14-CV-4534 (CBA) (MDG), 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (internal quotation marks omitted).

Finally, because Plaintiff is proceeding *pro se*, her Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  Nonetheless, a *pro se* litigant must still state a plausible claim for relief.  *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  Thus, the Court's "'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61).

## DISCUSSION

Defendants argue that the Complaint should be dismissed in its entirety because (1) Plaintiff's NYSHRL and NYCHRL claims against DOCCS are barred by the doctrine of

sovereign immunity; (2) Plaintiff's Title VII sexual harassment claim is time-barred; and (3) the

Complaint otherwise fails to state a claim for relief that is plausible on its face.  The Court will

first address Defendants' sovereign-immunity and statute-of-limitations arguments, and then will

address the sufficiency of Plaintiff's sexual harassment, retaliation, and hostile work

environment claims in turn.

## A.  Sovereign Immunity

As a threshold matter, the Court turns to Defendants' argument that any state- or city-law

claims against DOCCS are barred by the doctrine of sovereign immunity.  As a general rule,

because DOCCS is a state agency, it "may not be sued in federal court unless [it has] waived [its]

Eleventh Amendment immunity or there has been a valid abrogation of that immunity by

Congress." *Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F. Supp. 3d 221, 225-26

(W.D.N.Y. 2014).  The Supreme Court has held that, in enacting Title VII, Congress abrogated

state sovereign immunity pursuant to its enforcement powers under Section 5 of the Fourteenth

Amendment, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 456-57 (1976).  Accordingly, Plaintiff's

Title VII claims against DOCCS may proceed.  The same cannot be said, however, of Plaintiff's

NYSHRL and NYSHRL claims against DOCCS.  There is no evidence that, in enacting the

NYSHRL, New York consented to suit in federal court.  *See Allessi*, 16 F. Supp. 3d at 225;

*Dimps v. N.Y. State Office of Mental Health*, 777 F. Supp. 2d 659, 662 (S.D.N.Y. 2011); *Heba v.

N.Y. State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007).  Further, "[t]he City of

New York does not have the power to abrogate the immunity of the State," and the Second

Circuit has "found no evidence that the State has consented to suit in federal court under the

NYCHRL."  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).  Accordingly, Plaintiff's

NYSHRL and NYCHRL claims against DOCCS are barred by the doctrine of sovereign

immunity and must be dismissed.

## B.  The Timeliness of Plaintiff's Title VII Claims

Next, Defendants contend that Plaintiff's Title VII sexual harassment claim must be

dismissed as time barred.  To pursue a claim under Title VII, a plaintiff must file an

administrative complaint with the Equal Employment Opportunity Commission — or a parallel

state agency such as the NYSDHR — within 300 days of the alleged unlawful employment

practice.  *See* 42 U.S.C. § 2000e-5(e); *Richardson v. Comm'n on Human Rights & Opportunities*,

532 F.3d 114, 118 (2d Cir. 2008); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir.

2000).  As the Second Circuit has explained, the requirement "is analogous to a statute of

limitations," generally barring a plaintiff from bringing claims based on actions that occurred

outside of the statutory period.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d

Cir. 1996).  Importantly, the requirement does not apply to parallel claims brought under the

NYCHRL and the NYSHRL, which have three-year statutes of limitations that are subject to

tolling during the pendency of a plaintiff's complaint with the NYSDHR.  *See, e.g.*, *Esposito v.*

*Deutsche Bank AG*, No. 07-CV-6722 (RJS), 2008 WL 5233590, at *4 (S.D.N.Y. Dec. 16, 2008).

In this case, Plaintiff filed her complaint with the NYSDHR on October 2, 2013, so any

Title VII claims based on conduct occurring before December 6, 2012, are time barred.  (Am.

Compl., Ex. A at 42).  Plaintiff's sexual harassment claims are such claims, as there is no

allegation that Lima made romantic advances toward her after June 2012.  (*See* Am. Compl.

¶ 31).  In arguing otherwise, Plaintiff appears to invoke the "continuing violation doctrine" (Sur-

Reply (Docket No. 17) 5), which provides that, "if a plaintiff has experienced a continuous

practice and policy of discrimination, the commencement of the statute of limitations period may

be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks omitted); *accord Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *see also Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) (discussing an analogue to the continuing violation doctrine — perhaps better termed the "cumulative . . . violation" doctrine — in the context of hostile work environment claims). The doctrine, however, "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 304 (S.D.N.Y. 2014) (internal quotation marks omitted). Moreover, "discrete discriminatory acts" — including "termination, failure to promote, denial of transfer, or refusal to hire" — "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

Here, Plaintiff identifies no conduct in furtherance of her sexual harassment claims themselves that took place after June 2012. To be sure, the Complaint alleges that Lima later retaliated against Plaintiff for rebuffing his advances. (*See, e.g.*, Am. Compl. ¶¶ 51-54). But such discrete acts, standing alone, "cannot be used to pull in a time-barred discriminatory act," such as the unwanted sexual advances that form the bedrock of Plaintiff's sexual harassment claim. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (internal quotation marks omitted); *see also Fitzgerald*, 251 F.3d at 364-65 (affirming dismissal of a sexual harassment claim as time barred even though the plaintiff's supervisor had "harass[ed]" the plaintiff "for having rejected his propositions" during the statutory period); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 418 (S.D.N.Y. 2002) (finding the plaintiff's claims, to the extent they rested on unwanted sexual attention, to be time barred, because "although Plaintiff claims to have been retaliated against during the limitations period for rejecting [her supervisor's] sexual

advances, Plaintiff does not allege any present or continuing acts of sexual behavior").

Moreover, even if the limitations period did run from the time Lima first retaliated against

Plaintiff rather than the time of the unwanted advances themselves, *see Engelmann v. NBC*, No.

94-CV-5616 (MBM), 1996 WL 76107, at *14 (S.D.N.Y. Feb. 22, 1996) (holding that it was the

supervisor's act of retaliation for plaintiff's rejection of romantic advances, not the romantic

advances themselves, that triggered Title VII's filing period), the claim would still be untimely,

as Plaintiff alleges that Lima first retaliated against her in September 2012.  (Am. Compl. ¶ 33).

It follows that, whether construed as a claim of *quid pro quo* sexual harassment or a hostile work

environment claim, *see Leibovitz v. NYC Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001)

(discussing the two species of claims), Plaintiff's sexual harassment claim under Title VII must

be dismissed as time barred.

## C.  Sexual Harassment Claims

As noted, although Plaintiff's Title VII sexual harassment claims are time barred, her

sexual harassment claims under the NYSHRL and NYCHRL are not.  Turning to the merits, the

Court begins with Plaintiff's claims under the NYSHRL, which are governed by the same

standards as claims under Title VII.  *See, e.g.*, *McGullam v. Cedar Graphics, Inc.*, No. 04-CV-

2891 (DRH) (AKT), 2008 WL 3887604, at *5 n.4 (E.D.N.Y. Aug. 20, 2008) (citing *Quinn v.*

*Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998), *abrogation on other grounds*

*recognized by Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139 (2d Cir. 2014)); *see also*

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014).  A plaintiff

can bring two kinds of sexual harassment claims under Title VII and the NYSHRL: *quid pro quo*

claims and hostile work environment claims.  *See Leibovitz*, 252 F.3d at 188 (citing *Carrero v.*

*NYC Housing Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)).  *Quid pro quo* sexual harassment "occurs

when an employer alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (internal quotation marks omitted); *accord Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994). The second variety, hostile work environment, requires a plaintiff to show that his or her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks omitted).

In this case, Plaintiff fails to state a plausible claim of *quid pro quo* harassment. To state a plausible claim under that theory, a plaintiff must allege not only that she was subject to unwelcome sexual conduct, but also that "a tangible employment action resulted." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998). A "tangible employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004). Here, although Plaintiff's alleges that Lima retaliated against her in various ways, none rises to the level of a "significant change in employment status." Notably, Plaintiff still works for DOCCS, and nowhere does Plaintiff allege that she was demoted or not promoted by Lima because of her failure to accede to his romantic demands. Instead, she alleges principally that Lima assigned her difficult cases or those she would not normally cover (Am. Compl. ¶¶ 41-46; 51-54, 66); reassigned her to two partners instead of one (an action that was later reversed) (*id.* ¶¶ 33-34); interfered with her work and training schedule (*see, e.g., id.* ¶¶ 59-60); and took actions that were designed to make it appear as if she were not complying with certain job obligations (*id.* ¶¶ 62-

17

64, 67-68, 130-31).[3]  Although such actions may have been irritating to Plaintiff, none was "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted); *see also Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729 (SJF), 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (noting that "unfair work assignments, without more, do not amount to adverse employment actions because they are not materially adverse changes in the terms or conditions of the plaintiff's employment." (internal quotation marks omitted)).  Plaintiff never alleges, for example, that any changes in her job responsibilities were "accompanied by materially adverse changes in employment, such as a demotion or a loss of wages." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006).

To be sure, Plaintiff does make a stray allegation that Lima's assignments — specifically, his decision to assign PO Segal's cases to other parole officers rather than to her — deprived her of overtime.  (Am. Compl. ¶ 42 (arguing that "Plaintiff lost potential income as a result" of Lima's decision to assign PO Segal's cases to other parole officers)).  The Court need not credit that assertion, however, because it is directly contradicted by other allegations in the Complaint to the effect that DOCCS would *not* have had to incur overtime expenses if Lima had assigned PO Segal's cases to her.  (*Id.*  ¶¶ 41 (noting that Lima did not assign PO Segal's cases to her

---

[3]     Plaintiff alleges, for the first time in her sur-reply, that she applied for a higher position in another department in August 2012; that Lima somehow found out; and that she was not contacted for an interview.  (Pl.'s Sur-Reply (Docket No. 17) 3).  Accordingly, she alleges, "Lima might have influenced the possibility for her promotion . . . hence discriminating against the plaintiff for equal employment." (*Id.*).  As noted, the Court will not consider new factual allegations raised in Plaintiff's sur-reply.  *See, e.g.*, *Coyle v. Coyle*, 153 F. App'x 10, 11-12 (2d Cir. 2005) ("Even according Coyle the consideration afforded to *pro se* litigants, we conclude that the district court properly refused to consider additional alleged facts [included in the plaintiff's memorandum]."); *Scientific Computing Assoc., Inc. v. Warnes*, No. 07-CV-6351 (MAT), 2011 WL 1327398, at *4 (W.D.N.Y. Apr. 5, 2011) (declining to consider factual allegations not set forth in the *pro se* defendant's counter-complaint).

despite the fact that she "did not have a full caseload"), 49 (asserting that Lima's decision to assign PO Segal's cases to other parole officers resulted in "these parole officers having to do over time, rather than simply assigning more of PO Segal's cases to Plaintiff" and deeming it "unreasonable and financially irresponsible that . . . Lima would rather incur overtime expenses than fill Plaintiff's caseload with more of PO Segal's cases.")).  *See Doe v. Columbia Univ.*, — F. Supp. 3d —, No. 14-CV-3573 (JMF), 2015 WL 1840402, at *9 (S.D.N.Y. Apr. 21, 2015) ("Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (internal quotation marks omitted)).  In any event, although "denial of overtime may be sufficient in some cases to constitute a tangible employment action," *Fornah v. Cargo Airport Servs., LLC*, No. 12-CV-3638 (RER), 2014 WL 25570, at *6 (E.D.N.Y. Jan. 2, 2014) (internal quotation marks omitted), it must effect a "a *significant* change in employment status" in order to constitute a tangible employment action, *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2456 (2013) (emphasis added) (internal quotation marks omitted).  In this case, Plaintiff does not allege, let alone plausibly, that any denial of overtime as a result of not being transferred certain cases had such an effect on her employment; indeed, as noted, the Complaint includes only a conclusory assertion that "Plaintiff lost potential income as a result" of Lima's transfer decisions (Am. Compl. ¶ 42), and that other parole officers earned overtime on cases that could have been transferred to her (*id.* ¶ 49).  This "conclusory allegation that she was denied overtime, without more, is insufficient to substantiate an adverse employment action."  *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (citing cases).

  Plaintiff's allegations fare no better under the hostile work environment theory.  The NYSHRL, like Title VII, "does not reach genuine but innocuous differences in the ways men and

women routinely interact with members of the same sex and of the opposite sex"; instead, "it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Accordingly, "courts must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment," *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (internal quotation marks omitted), an inquiry that may be guided by "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, although Lima began inviting Plaintiff to accompany him on social events in September 2010, Plaintiff herself admits that she had no reason, at that time, to suspect anything amiss with those invitations, because Lima "had always been respectful" and was married. (Am. Compl. ¶ 23). It was not until May 2011 that Plaintiff became aware that Lima had romantic feelings towards her, and even then and in the year following, Lima's conduct was limited to declaring that he was "infatuated" with her and pressuring her to go on dates with him. (*Id*. ¶¶ 26-32). While his repeated requests for dates — at least once accompanied by a work-related threat — may have been inappropriate, and were undoubtedly irritating and discomfiting to Plaintiff, they do not rise to the level of "severe or pervasive" conduct necessary to sustain a hostile work environment claim under the NYSHRL (or Title VII). Indeed, the Second Circuit and courts in this District have regularly held that conduct far more egregious than that displayed by Lima does not rise to the level of an actionable hostile work environment claim. *See, e.g.*, *Quinn*, 159 F.3d at 768 (affirming dismissal of a hostile work environment claim where a

supervisor told the plaintiff that "she had been voted the 'sleekest ass'" in the office and touched the plaintiff's breasts with papers in his hand); *Prince v. Cablevision Sys. Corp.*, No. 04-CV-8151 (RWS), 2005 WL 1060373, at *2, 6-7 (S.D.N.Y. May 6, 2005) (dismissing a hostile work environment claim on a Rule 12(c) motion where an employee was subjected to "sex talk," and where a co-worker attempted to kiss the plaintiff and asked her to have sex with him); *O'Dell*, 153 F. Supp. 2d at 386 (dismissing a hostile work environment claim where a supervisor made comments about the plaintiff's appearance, "sent her e-mails professing his love for her, called her at work and at home, invited her to tour New York City with him, gave her three gifts, and played her a song that she found offensive").

In short, Plaintiff's sexual harassment claims under the NYSHRL must be and are dismissed for failure to state a claim.  (If they had been timely, Plaintiff's sexual harassment claims under Title VII would obviously be subject to dismissal for the same reasons.)  By contrast, Plaintiff does state a plausible claim of sexual harassment against Lima under the NYCHRL, which "does not require either materially adverse employment actions or severe and pervasive conduct" in order to state a claim for sexual harassment.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).  "Instead, a focus on unequal treatment based on gender — regardless of whether the conduct is 'tangible' (like hiring or firing) or not — is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute."  *Id.* (internal quotation marks omitted).  Thus, although New York courts have held that the NYCHRL, like Title VII, does not "operate as a general civility code," and that a defendant may avoid liability for acts that are nothing more than "petty slights and trivial inconveniences," *Nelson v. HSBC Bank USA*, 929 N.Y.S.2d 259, 264 (App. Div., 2d Dep't 2011) (internal quotation marks omitted), "all that is [generally] required under the NYCHRL is

21

that [Plaintiff] proffer evidence of 'unwanted gender-based conduct,'" *Bermudez*, 783 F. Supp.

2d at 588 (quoting *Williams v. NYC Housing Auth.*, 872 N.Y.S.2d 27, 38 (App. Div., 1st Dep't

2009)).  Here, Plaintiff adequately alleges that she suffered "unwanted gender-based conduct" in

the form of Lima's persistent romantic overtures.  *See Garrigan v. Ruby Tuesday, Inc.*, No. 14-

CV-155 (LGS), 2014 WL 2134613, at *4 (S.D.N.Y. May 22, 2014) ("The Complaint alleges that

Defendant Edwards treated Plaintiff less well by spreading rumors about her at work, and that he

did so on account of her gender — i.e., because she rejected Mr. Palmer's requests to resume

their relationship.  Those allegations are sufficient to state a claim under the NYCHRL.").

## D.  Retaliation Claims

Separate and apart from prohibiting discrimination on the basis of a protected

characteristic, Title VII, the NYSHRL, and the NYCHRL all prohibit retaliation for engaging in

a "protected activity."  Title VII, for example, prohibits employers from discriminating against

an employee because "he [or she] has opposed any practice made an unlawful employment

practice by this subchapter" or "has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. §

2000e-3(a).  Liberally construed, the Complaint in this case can also be read to assert claims of

such retaliation — that is, claims that Lima retaliated against Plaintiff, based not on her rejection

of Lima's romantic advances but, rather, on her decision to file a complaint of harassment

against him.  In addition, the Complaint makes similar allegations against Plaintiff's co-workers

and other supervisor, SPO Medina.  It alleges, for example, that once it became clear that

Plaintiff planned to file a formal complaint against Lima, SPO Medina's "attitude and treatment

towards Plaintiff changed."  (Am. Compl. ¶ 76).

To establish a *prima facie* case of unlawful retaliation under Title VII and the NYSHRL, "an employee must show that (1) he [or she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d at 24 (internal quotation marks omitted); *see also Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL."). Although the standard for pleading a NYCHRL retaliation claim is "similar to the anti-retaliation standard under Title VII" — a plaintiff must allege the existence of a protected activity, an "employment action disadvantaging [him] or her," and a causal connection between the two — "New York courts have emphasized that the standard under the NYCHRL is broader." *Thai v. Cayre Grp.*, 726 F. Supp. 2d 323, 332 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Williams*, 872 N.Y.S.2d at 34 n.12). It follows that, if a plaintiff states a claim under Title VII and the NYSHRL, the claim "necessarily survives under the more liberal standard of NYCHRL as well." *Anderson v. City of N.Y.*, No. 06-CV-5726 (RRM) (RER), 2012 WL 6720694, at *7 (E.D.N.Y. Dec. 27, 2012); *see also Armstrong v. Metro. Transp. Auth.*, No. 07-CV-3561 (DAB), 2015 WL 992737, at *6 (S.D.N.Y. Mar. 3, 2015) (denying motion for summary judgment with respect to the plaintiff's NYCHRL claims that also survived under Title VII, because "'federal and state civil rights laws are a floor below which the City's Human Rights law cannot fall'" (quoting N.Y.C. Local Law No. 85 of 2005, at § 1 (Oct. 3, 2005))). Accordingly, the Court begins by addressing the plausibility of Plaintiff's retaliation claims under Title VII and the NYSHRL.

Plaintiff's allegations are plainly sufficient to satisfy the first two prongs of the *prima facie* standard under Title VII and the NYSHRL.  First, three events plainly qualify as "protected activity": Plaintiff's decision to lodge an internal complaint with DOCCS in July 2013, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (noting that "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection," and such opposition includes "activities such as making complaints to management" (internal quotation marks omitted)); her filing of a complaint with the NYSDHR in October 2013; and her initiation of this lawsuit in October 2014.  Additionally, on June 13, 2013, Plaintiff told Lima that she believed his decision to assign her PO Grissom's cases constituted retaliation and that she would report him unless he stopped.  (Am. Compl. ¶¶ 38-39).[4]  That too would appear to qualify, as "communicating one's intent to engage in [a protected activity] can itself be a protected activity," *Cooper*, 2010 WL 4345715, at *6 (citing *Jute*, 420 F.3d at 175) and Plaintiff initiated a formal investigation with DOCCS only three

---

[4]      In addition, of course, Plaintiff rejected Lima's advances in May 2011 and June 2012. (Am. Compl. ¶¶ 25-30).  Putting aside the fact that those rejections fall outside the statute of limitations for purposes of Title VII, whether the mere rejection of sexual advances constitutes a "protected activity" for the purposes of Title VII and the NYSHRL is an open question in this Circuit, *see Fitzgerald*, 251 F.3d at 366 (declining to rule on the district court's holding that the "rejection of sexual advances is not a protected activity under Title VII" (internal quotation marks omitted)), and has divided district courts, *see, e.g.*, *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) (noting the disagreement and citing cases).  The Court agrees with those courts that have held that "simply . . . declining a harasser's sexual advances" does not constitute a protected activity for the purpose of a retaliation claim. *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996).  First, "[i]f it were otherwise, every harassment claim would automatically state a retaliation claim as well."  *Id.* at 439.  Second, "one of the key purposes of the retaliation provisions in anti-discrimination statutes such as Title VII and the NYSHRL is 'preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [statute's] basic guarantees.'  But if one makes no effort to secure or advance the guarantees of an anti-discrimination statute by taking any action in response to allegedly discriminatory conduct, there can be nothing for the employer to interfere with."  *Reid*, 876 F. Supp. 2d at 189 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006)).

weeks later.  Second, the Complaint alleges that Lima and several of Plaintiff's other co-workers were aware of her intention to file, and eventual filing of, complaints, in no small part because some of Plaintiff's co-workers were interviewed as part of an investigation launched by DOCCS. (*See, e.g.*, Am. Compl. ¶¶ 48, 139; *see also id.*, Ex. A at 50 (noting that DOCCS interviewed Lima and SPO Medina as part of its internal investigation into Plaintiff's allegations of sexual harassment)).

Thus, the key question for purposes of Plaintiff's retaliation claims under Title VII and the NYSHRL is whether the Complaint plausibly alleges that any actions taken by Lima or Plaintiff's other colleagues constitute "materially adverse" actions causally connected to her protected activities.  Significantly, the anti-discrimination and anti-retaliation provisions of the two statutes "are not coterminous."  *White*, 548 U.S. 53 at 67.  That is, while Title VII's discrimination provision limits actionable claims to employer activities that affect the terms and conditions of employment, the statute's "anti-retaliation provision applies broadly to 'employer actions that would have been materially adverse to a reasonable employee or job applicant.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *White*, 548 U.S. at 57).  A plaintiff, however, must prove "material" adversity, which helps ensure that Title VII and the NYSHRL do "not set forth a general civility code for the American workplace."  *Id.* (internal quotation marks omitted).  Materially adverse actions are those that are "'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination,'" *id.* (quoting *White*, 548 U.S. at 57), and can include "unchecked retaliatory co-worker harassment, if sufficiently severe," *Rivera*, 743 F.3d at 26-27 (internal quotation marks omitted). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee."  *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).

Further, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable. *Hicks*, 593 F.3d at 165 (internal quotation marks omitted).

Measured against those standards, the vast majority of Plaintiff's allegations fall short. For starters, although Plaintiff's alleges that her co-workers retaliated against her in various ways, none of their conduct is "sufficiently severe" to qualify. *Rivera*, 743 F.3d at 26-27. Plaintiff alleges, for example, that PO Grissom was responsible for "gossip" about her and even threatened her. (Am. Compl. ¶¶ 92-102). But courts interpreting the Supreme Court's decision in *White* "have held that empty verbal threats do not cause an injury, and therefore are not materially adverse actions, where they are unsupported by any other actions." *Vazquez v. Southside United Hous. Dev. Fund Corp.*, No. 06-CV-5997 (NGG) (LB), 2009 WL 2596490, at *12 (E.D.N.Y. Aug. 21, 2009).[5] Plaintiff further alleges that, as a result of the complaint she filed, PO Lesser "constantly spoke negatively about Plaintiff to other colleagues . . . ignored Plaintiff on several occasions, rarely spoke to her and often did not reply to her greetings," (Am. Compl. ¶ 109); that another colleague "practically accused" Plaintiff of taking a confiscated cell phone, apparently only by stating that she may have given that phone to Plaintiff (*id.* ¶ 116), and that Lima's secretary said she thought Plaintiff was "going to punch" her co-worker during the interaction about the cell phone (*id.* ¶ 119). Those actions, however, do not rise above "the sorts

---

[5]     Moreover, even if PO Grissom's actions could be considered materially adverse, Plaintiff alleges that he "only began exhibiting hostile behavior towards the Plaintiff after Defendant Lima intentionally assigned Plaintiff some of PO Grissom's cases," not after Plaintiff initiated an investigation into Lima. (Am. Compl. ¶ 93). It is well established, however, that "mere continuation of an adverse employment condition . . . does not, without more, logically support an inference that the protected activity prompted retaliation." *Fenner v. News Corp.*, No. 09-CV-9832 (LGS), 2013 WL 6244156, at *26 (S.D.N.Y. Dec. 2, 2013) (internal quotation marks omitted).

of petty slights and personality conflicts that are not actionable" under Title VII and the

NYSHRL. *Tepperwien*, 663 F.3d at 571 (internal quotation marks omitted).[6]

As for Plaintiff's allegations with respect to her two supervisors, Lima and SPO Medina, many of their challenged acts — including Lima's decision to separate Plaintiff from her partner and to assign Plaintiff to a three-person instead of a two-person team; Lima and SPO Medina's refusal to split her ex-partner's case load; and Lima's decision to assign Plaintiff PO Grissom's cases instead of those of PO Segal (Am. Compl. ¶¶ 33-37) — occurred, or at least started, before Plaintiff engaged in any protected activity (the earliest of which, as noted, occurred on June 13, 2013). By definition, that makes them irrelevant to Plaintiff's retaliation claims. *See, e.g.*, *Petyan v. NYC Law Dep't*, No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961, at *13 (S.D.N.Y. Apr. 23, 2015) ("To constitute retaliation, the alleged protected activity must predate evidence of the alleged retaliatory animus." (internal quotation marks omitted)); *see also, e.g.*, *Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955, at *4 (S.D.N.Y. Apr. 1,

---

[6]     Plaintiff also alleges that various co-workers conducted "illegal search[es] of her personal property with the purpose of taking" evidence related to the investigation against Lima (Am. Compl. ¶ 112-29), a claim that she styles in her sur-reply as one based on "tampering of evidence, and the violation of the plaintiff's Fourth amendment rights, 'unreasonable search and seizure.'" (Pl.'s Sur-Reply 6). These allegations, liberally construed, appear to assert a claim for damages under Section 1983, which prohibits the violation of constitutional rights under color of state law. 28 U.S.C. § 1983. But Section 1983 "constrains state action, not purely private action," *Pierre v. J.C. Penney Co.*, 340 F. Supp. 2d 308, 313 (E.D.N.Y. 2004), so it is "'wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official,'" *Roff v. Low Surgical & Med. Supply, Inc.*, No. 03-CV-3655 (SJF) (JMA), 2004 WL 5544995, at *7 (E.D.N.Y. May 11, 2004) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Although Plaintiff's co-workers are state employees, "[g]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (U.S. 1988). Here, there is no indication that Plaintiff's co-workers were "exercising any official responsibilities" when they conducted the alleged searches at issue. *Stampf v. Long Island R.R. Auth.*, No. 07-CV-3349 (SMG), 2010 WL 2517700, at *9 (E.D.N.Y. June 14, 2010). Accordingly, to the extent that Plaintiff asserts a claim on this score, it must be dismissed.

2015).  Plaintiff does not allege that her work assignments became significantly more onerous when she communicated an intent to file a discrimination complaint; to the contrary, some of the activities she challenges most — such as the decision to assign her PO Grissom's cases and the assignment of "the worst mental health cases" to her before assuming a SOU caseload (Am. Compl. ¶¶ 37-38, 66) — began prior to any protected activity.  *See, e.g.*, *Hall v. Parker Hannifan Corp.*, 824 F. Supp. 2d 464, 469 (W.D.N.Y. 2009) ("Courts have held that if the alleged retaliatory behavior pre-existed the protected activity, the plaintiff must provide some evidence of ratcheting up or increased harassment to succeed." (internal quotation marks omitted)).

Limiting the inquiry to conduct that began after Plaintiff engaged in protected activity, many of the actions that she challenges do not constitute "materially adverse" actions sufficient to bring a Title VII or NYSHRL claim, as they are nothing more than "petty slights, minor annoyances, and simple lack of good manners."  *White*, 548 U.S. at 68.  Plaintiff cannot premise a claim, for example, on the fact that SPO Medina forced her to wait longer for meetings with him (Am. Compl. ¶ 78); told her that he had "no time to talk to [her]" (*id.* ¶ 82); and using the word "fucker" in a meeting, allegedly (and seemingly jokingly) in reference to her (*id.* ¶ 87), because even "incidents where [a] supervisor publicly yelled at plaintiff for various reasons or called him 'shit' constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."  *Tepperwien*, 663 F.3d at 571 (internal quotation marks omitted).  The same is true of Plaintiff's allegations that Lima forced her to change cubicles and to cede her parking space to a visiting SPO.  (Am. Compl. ¶¶ 56, 58).  As Plaintiff herself notes, the inconvenience of moving cubicles was one suffered by two other parole officers (*id.* ¶ 56), and, in any event, office reassignments, by themselves, are not materially adverse actions under Title VII and the NYSHRL.  *See Klein v. N.Y. Univ.*, 786 F. Supp. 2d 830, 845, 847 (S.D.N.Y. 2011).

That said, some of Plaintiff's allegations have more force and do plausibly constitute "materially adverse" actions.  In particular, Plaintiff alleges that Lima and SPO Medina took several steps to actively sabotage her work assignments.  She alleges, for example, that: (1) on September 9, 2013, SPO Medina un-submitted two of her timesheets, a fact corroborated by another DOCCS employee (Am. Compl. ¶ 83; *id.*, Ex. A at 40; (2) in December 2013, she submitted a Violation of Parole ("VOP") for one of her cases, which Medina and Lima did not process for almost a month in violation of standard protocol, making it appear that she "[was] not submitting her work on time and thus violating standard policy" (*id.* ¶¶ 62-64); and (3) Lima intentionally reassigned cases that, largely because of the timing of the transfer or because of a parolee's continuing obligations to report to the parole officer previously assigned to the case, would make her appear to be noncompliant with the monthly home visits required for these cases.  (*id.* ¶¶ 67-68, 130-31).  A more developed record may well lead to the conclusion that these actions are not materially adverse when viewed in the context of Plaintiff's overall employment environment.  *See, e.g.*, *Tepperwien*, 663 F.3d at 572 (concluding that the plaintiff did not experience materially adverse employment actions because, given the plaintiff's position — security officer at a nuclear power plant — "[i]t is not surprising that Tepperwien was treated in a rough and tumble manner rather than with kid gloves or in a genteel fashion.").  But considering them together, and drawing all inferences in Plaintiff's favor, such actions could "well dissuade a reasonable worker from making or supporting a charge of discrimination," and accordingly may qualify as materially adverse actions for the purposes of a retaliation claim. *Hicks*, 593 F.3d at 165 (internal quotation marks omitted); *see Millea v. Metro-N. R.R.*, 658 F.3d 154, 164-65 (2d Cir. 2011) (holding that a formal reprimand could qualify as a "materially adverse" action, even if it did not "directly or immediately result in any loss of wages or

benefits" or become a permanent part of the employee's file, because "it can reduce an employee's likelihood of receiving future bonuses, raises, and promotions, and it may lead the employee to believe (correctly or not) that his job is in jeopardy"); *Gordon v. City of N.Y.*, No. 14-CV-6115 (JPO), 2015 WL 3473500, at *12 (S.D.N.Y. June 2, 2015) ("If a [workplace action] subjects an employee to stigma and a negative reputation among coworkers, it could dissuade a reasonable worker from making a similar charge of discrimination.  It therefore qualifies as 'adverse.'").

Having found that the Complaint alleges that Lima and SPO Medina took some "materially adverse" actions against Plaintiff, the only remaining question is whether it plausibly alleges a causal connection between those actions and any of Plaintiff's protected activities.  The Court concludes that it does.  Proof of causation "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  Here, there are no allegations of retaliatory animus, but some of Lima's and SPO Medina's alleged acts of sabotage — namely, Medina's decision to "un-submit" Plaintiff's time sheets, and their failure to process Plaintiff's VOP request — took place less than two to three months after Plaintiff filed her DOCCS complaint and her DHR complaint, respectively.  (Am. Compl. ¶¶ 62-64, 83).  At the motion-to-dismiss stage, that temporal proximity is enough to establish a plausible causal connection.  *See, e.g.*, *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001) (holding that five months between a protected activity and an adverse

action can suffice to establish a causal connection between the two); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (same).[7]

In short, some of Plaintiff's allegations concerning Lima and SPO Medina are sufficient to state a claim of retaliation under Title VII (against DOCCS) and under the NYSHRL (against Lima). It follows that Plaintiff's retaliation claim under the NYCHRL (against Lima) is also sufficient to survive Defendants' motion to dismiss.

## E.  Hostile Work Environment Claims

Finally, to the extent Plaintiff pleads a claim of hostile work environment against all of her co-workers — separate and apart from her allegations of sexual harassment against Lima and those of retaliation for her complaints against Lima, both discussed above — the claim must fail, whether styled as one under Title VII, the NYSHRL or the NYCHRL. This is for one simple reason: Apart from Plaintiff's allegations regarding Lima's alleged campaign of sexual harassment, which the Court has already addressed, Plaintiff does not suggest — let alone plausibly — that any actions taken by her colleagues were on the basis of her sex or any other protected characteristic. *See Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (dismissing a hostile work environment claim because "there is nothing in the record to indicate that Brown's unfairness (if any) was motivated by Alfano's sex."); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-0454 (RA) (JLC), 2013 WL 3487032, at *27 (S.D.N.Y. July 9, 2013) (noting that even under the NYCHRL, a plaintiff must "plead facts tending to show that actions that created the hostile

---

[7]     The same cannot be said for Plaintiff's claim that Lima assigned her cases to make it appear as if she was not complying with her visit obligations (*see* Am. Compl. ¶ 67), as the Complaint alleges only that these actions occurred on an "ongoing basis." *See, e.g.*, *Kincade v. Snow*, No. 00-CV-1801 (PCD), 2003 WL 22735064, at *3 (D. Conn. Nov. 10, 2003) ("Plaintiff failed to provide any dates for when the allegedly retaliatory conduct occurred, thus it is impossible to infer causation based on temporal proximity.").

work environment were taken against him because of a prohibited factor," and that "the broader remediation available under the City law does not allow the Plaintiff to dispense with linking his claim of hostility to some attitude that the law forbids." (internal quotation marks omitted)). Indeed, even with respect to allegations with gender-based overtones — for example, that SPO Medina made disparaging comments implying that Plaintiff was a lesbian; that PO Lesser made a disapproving statement about false accusations in the sexual assault context; and that PO Segal falsely claimed to other co-workers that he had "been intimate" with Plaintiff (Am. Compl. ¶¶ 81, 106, 113-14) — Plaintiff fails to allege that her co-workers' conduct was because of her sex. Accordingly, Plaintiff's claims on this score must be dismissed. *See, e.g.*, *Williams v. Metro-N. Commuter R.R.*, No. 11-CV-7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012) ("Plaintiff does not allege that any of the acts . . . were perpetrated against him because of either his race or his gender. That is fatal to his hostile work environment claim."); *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 301 (S.D.N.Y. 2012) (dismissing all hostile work environment claims because there was no evidence linking any unequal treatment to race).

## F.  Other Potential Claims

Plaintiff also alleges that DOCCS "mishandled" the investigation into her discrimination claim in various ways. (Am. Compl. ¶¶ 101, 135-47). It is unclear under what legal theory she challenges that conduct but, in any event, the Second Circuit has held that a complete "failure to investigate a complaint of discrimination cannot be considered an adverse employment action" for the purposes of a retaliation claim. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). If a failure to investigate does not qualify as an adverse employment action under Title VII's broader definition of the term for retaliation claims, such failure plainly does not qualify under the stricter definition for discrimination claims. *See, e.g.*, *Taylor v. NYC*

*Dep't of Educ.*, No. 11-CV-3582 (JG), 2012 WL 5989874, at *9 (E.D.N.Y. Nov. 30, 2012)

(noting that "[t]he standard for an adverse employment action in retaliation claims is

considerably broader than the standard for discrimination claims under Title VII" (internal

quotation marks omitted)).  It follows that DOCCS's allegedly biased investigation of Plaintiff's

claims — which is plainly less egregious than the failure to conduct *any* investigation — does

not suffice to state a claim under Title VII.  Further, to the extent Plaintiff pleads claims of

investigatory misconduct against DOCCS under the NYSHRL and NYCHRL pursuant to a

theory of aider-and-abettor liability, *see Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393

(S.D.N.Y. 2014), those claims, as noted, are barred by the doctrine of sovereign immunity.

Additonally, any such claims against Lima — the very subject of the allegedly mishandled

investigation — would fail, because "an individual may not be held liable merely for aiding and

abetting his own discriminatory conduct but only for assisting another party in violating that

law."  *Id.* (internal quotation marks omitted).

Finally, Plaintiff "strongly believes" that "someone from the Bureau and/or DOCCS"

communicated with her former attorney and former therapist, in "clear violation of her

confidentiality rights."  (Am. Compl. ¶¶ 149-55).  She never specifies who that person was,

however, and bases her "belie[f]" only on perceived changes in the behavior of her co-workers

and a co-worker's comments about an unnamed person seeking therapy.  Regardless of the legal

theory under which she challenges these activities, such abstract allegations — based, as noted,

on nothing more than perceptions about her co-worker's behaviors and a comment about therapy

that was not expressly directed at Plaintiff — fail to raise any right to relief "above the

speculative level."  *Twombly*, 550 U.S. at 555; *see also Dooley v. Jetblue Airways Corp.*, No. 14-

CV-4432 (JMF), 2015 WL 1514955, at *5 (S.D.N.Y. Apr. 1, 2015) (noting that "conclusory

assertions about what [the plaintiff] 'believes' and what 'seems certain'" fail to plausibly support a claim for employment discrimination).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically, the Court dismisses Plaintiff's sexual harassment claims under Title VII and the NYSHRL; all of Plaintiff's hostile work environment claims; and all of her NYSHRL and NYCHRL claims against DOCCS.  Plaintiff's sexual harassment and retaliation claims against Lima under the NYCHRL, her Title VII retaliation claim against DOCCS, and her NYSHRL retaliation claim against Lima, on the other hand, are sufficient to survive Defendants' motion to dismiss.

The Clerk of Court is directed to terminate Docket No. 10 and to mail a copy of this Opinion and Order to Plaintiff.


        SO ORDERED.

Date:   July 31, 2015
        New York, New York

JESSE M. FURMAN
United States District Judge