USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/11/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROSA A. NUNEZ,

                Plaintiff,

            -v-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
et al.,

                Defendants.
------------------------------------------------------------------------X

14-CV-6647 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

      Plaintiff Rosa Nunez ("Plaintiff"), proceeding *pro se*, brings this action against her employer, the New York State Department of Corrections and Community Supervision ("DOCCS"), and her former supervisor, Joseph Lima (together with DOCCS, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Code § 8-101 *et seq*. In an earlier Opinion and Order, familiarity with which is assumed, the Court dismissed all but three of Nunez's claims. *See Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2015 WL 4605684 (S.D.N.Y. July 31, 2015). Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on those remaining claims: retaliation claims against DOCCS under Title VII and against Lima under the NYSHRL and the NYCHRL; and a sexual harassment claim against Lima under the NYCHRL. (Docket No. 46). For the reasons discussed below, the Court holds that Nunez's remaining federal claim fails as a matter

of law (as does her corresponding NYSHRL claim, which is subject to the same standards), and declines to exercise supplemental jurisdiction over Nunez's claims under the NYCHRL. Accordingly, Defendants' motion is granted.

## BACKGROUND

The relevant facts, taken from the Amended Complaint and materials submitted in connection with the pending motions, are either undisputed or described in the light most favorable to Nunez. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

Nunez is a DOCCS parole officer. (Docket No. 3 ("Am. Compl.") ¶ 17). She alleges that, between 2011 and 2013, Lima, who was her supervisor at the time, repeatedly expressed his interest in her romantically and retaliated against her when she rebuffed him. (*Id.* ¶¶ 20-73). The details of that conduct are largely irrelevant here. What is relevant is that, on July 11, 2013, Nunez initiated an internal DOCCS investigation of Lima's conduct and, nearly two weeks later, she filed a formal complaint with the DOCCS Office of Diversity Management. (Docket No. 30-1, at 49, 58-63). A few months later, on October 2, 2013, Nunez also filed a complaint with the New York State Division of Human Rights, accusing Lima of sexual harassment and retaliation. (*Id.* at 30-42). Nunez alleges that, in the year that followed, Lima and his colleagues retaliated against her in various ways. (Am. Compl. ¶¶ 74-121).

---

[1] In connection with her opposition to Defendants' motion, Nunez submits a transcript of her deposition testimony with an errata sheet and various corrections. (*See* Docket Nos. 60-1 & 60-2). Nunez also claims, without any evidence, that her deposition was "forged" and "altered." (Docket No. 67, at 2-4). Although Nunez is entitled to make changes to her deposition testimony within the allotted time-frame of thirty days under Rule 30(e) of the Federal Rules of Civil Procedure, she "is not entitled to have [her] altered answers take the place of the original ones. [Her] original deposition answers constitute the admissions of a party, and as such form part of the record evidence." *CSC Holdings, Inc. v. Alberto*, 379 F. Supp. 2d 490, 493, n.1 (S.D.N.Y. 2005) (internal quotation marks omitted). That said, Defendants concede that Nunez's amendments do not change her deposition testimony in any material way. (Docket No. 61, at 4).

The Court previously found that that the "vast majority" of Nunez's allegations of retaliatory conduct did "not rise above the sorts of petty slights and personality conflicts that are not actionable under Title VII and the NYSHRL." *Nunez*, 2015 WL 4605684, at *14 (internal quotation marks omitted). The Court concluded, however, that two of Nunez's allegations had "more force" and might "plausibly constitute" actionable conduct. *Id.* at *15. First, on one occasion, Senior Parole Officer ("SPO") Miguel Medina, Nunez's immediate supervisor, "un-submitted" two of her timesheets. (Am. Compl. ¶ 83; Docket No. 50-1 ("Nunez Depo."), at 126-28). Second, on another occasion, Nunez submitted a Violation of Parole ("VOP"), which Medina and Lima did not process for almost one month in violation of standard protocol. (Am. Compl. ¶¶ 62-64; Nunez Depo. 78-80).[2] The Court found that Nunez's retaliation claims survived on the basis of those allegations. *See Nunez*, 2015 WL 4605684, at *16. At the same time, the Court pointedly noted that "[a] more developed record may well lead to the conclusion that these actions are not materially adverse when viewed in the context of Plaintiff's overall employment environment." *Id.*

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v.*

---

[2] The Court found that one other allegation qualified as materially adverse: that Lima intentionally reassigned her cases in a manner that would make her appear to be noncompliant with home visit policies. *See Nunez*, 2015 WL 4605684, at *15. But the Court held that Nunez could not establish a causal connection between any protected activity and that treatment because the Complaint alleged only that the treatment occurred on an "ongoing basis." *Id.* at 16 n.7.

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Moreover, because Nunez proceeds *pro se*, the Court must grant her "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010). Such special solicitude is not unlimited, however. Provided the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, a *pro se* party opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey*, No. 07-CV-7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

## DISCUSSION

### A. Retaliation Under Title VII

In order to establish a *prima facie* case of unlawful retaliation under Title VII, "an employee must show that (1) he [or she] was engaged in protected activity; (2) the employer was

4

aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (alterations omitted); *accord Schultz v. Congregation Shearith Israel of the City of N.Y.*, No. 16-3140-cv, slip op. at 22 (2d Cir. August 10, 2017). If the plaintiff does so, "the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). And if the employer carries that burden, then the burden shifts back to the plaintiff, who must establish "that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.* A plaintiff alleging retaliation in violation of Title VII must show at the final step of the analysis that retaliation was a "but-for" cause of the adverse action, not simply a "substantial" or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 113 S. Ct. 2517, 2526 (2013). "But-for" causation does not, however, require proof that retaliation was the only cause of the employer's action — it is enough that the adverse action "would not have occurred in the absence of the" retaliatory motive. *Id.* at 2533.

As the Court observed in its earlier Opinion, "the key question" in this case is whether "any actions taken by Lima or [Nunez's] other colleagues constitute 'materially adverse' actions causally connected to her protected activities." *Nunez*, 2015 WL 4605684, at *13. "Actions are 'materially adverse' if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (internal quotation marks omitted); *accord Schultz*, No. 16-3140-cv, slip op. at 23. This materiality requirement "reflects the principle that Title VII does not protect an employee from all retaliation, but only retaliation that produces an injury or harm." *Rivera*, 743

5

F.3d at 24-25 (internal quotation marks omitted); *accord Schultz*, No. 16-3140-cv, slip op. at 23. It helps to ensure that Title VII does "not set forth a general civility code for the American workplace." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted). Thus, to qualify as "material," an "adverse employment action" must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (alteration in original). Materially adverse actions can also include "unchecked retaliatory co-worker harassment, if sufficiently severe." *Rivera*, 743 F.3d at 26 (internal quotation marks omitted). "[M]aterial adversity is to be determined objectively, based on the reactions of a reasonable employee." *Id.* at 25. Nevertheless, "context matters, as some actions may take on more or less significance depending on the context, and alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." *Id.* (internal quotation marks, citations, and brackets omitted).

Measured against these standards, and in light of the "more developed record" at this stage of the proceedings, the two actions alleged by Nunez that the Court had earlier found could plausibly qualify as "materially adverse" — SPO Medina's conduct in "un-submitting" her timesheets and Medina and Lima's delay in processing a VOP she submitted — fall short. *Nunez*, 2015 WL 4605684, at *15.[3] For starters, Nunez concedes that neither action resulted in

---

[3] In her memorandum of law, Nunez also alleges, for the first time, that someone deleted entries that she made with respect to two VOP reports from the case management system. (Docket No. 60 ("Pl.'s Opp'n"), at 4). That allegation is not supported by admissible evidence.

any negative consequence. (Nunez Depo. 79-81, 128-29). In the case of the timesheets, Nunez testified that when she re-submitted her timesheets, Medina approved them, resulting in no loss of pay or other adverse consequence. (*Id.* at 128-29). *See also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (holding that a rescinded disciplinary counseling session did not constitute a material adverse employment action); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (holding that a change in an employee's reporting structure was not an adverse employment action where it was rescinded after the employee complained); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (holding that a jury could reasonably find that a negative performance evaluation did not constitute material adverse action, where it was rescinded and destroyed two weeks after it was issued). And with respect to the VOP allegation, Nunez admitted that she had signed and dated the reports upon submission and that any delay in processing would not have resulted in negative consequences for her. (Nunez Depo. 79 ("Q: So would it be fair to say you're covered because you dated that report? A: Yes.")). Significantly, at no point after the alleged retaliation began did Nunez receive a single negative evaluation from her supervisors; nor was she ever denied a salary increase. (*Id*. at 68-69). Additionally, Nunez's testimony that Lima and Medina accommodated her complaints about her work conditions on many occasions undermines Nunez's contention that she suffered materially adverse employment actions at the hands of her supervisors. (*Id*. at 100-101 (admitting that Lima assigned Nunez back to a two-person partnership after she complained about being transferred to a three-person partnership); *id*. at

---

In any event, Nunez does not include any details with respect to the alleged incidents, such as the who, when, or why. Additionally, she acknowledges that she "also heard about situations from co-workers whose supervisors" did the same thing to them (*id.* at 4-5), undermining any inference that the deletions were done in retaliation for her protected activity.

101-02 (acknowledging that, after she complained, Medina and another officer reassigned a case involving a parolee with a history of verbal and physical hostility towards women)).

In short, "even when viewed in the together in the light most favorable" to Nunez, Defendants' actions in this case "do not meet the standard for a materially adverse action." *Schultz*, No. 16-3140-cv, slip op. at 24. In arguing otherwise, Nunez asserts that, as a result of the delay in processing her VOP, "her name appeared on a list of people whose reports were on 'Alert' status for being late" and that being on that list could "have negative consequences for [her] when applying for a promotion or any special assignment or special unit, among others." (Docket No. 60 ("Pl.'s Opp'n"), at 4, 8). More drastically, Nunez claims that if the violator had "committed a heinous crime" while her report was in "Alert" status, she could have been fired. (Pl.'s Opp'n 4). But Nunez provides no evidence to back up these conclusory and hypothetical assertions. And, in any event, Nunez does not explain who had access to the "Alert" status list or how being placed on the list harmed her future employment prospects — particularly given her own admission that the VOP report had been signed and dated in a way that would prevent any delay from being attributed to her. (Nunez Depo. 79). On top of that, to the extent that Nunez is alleging potential consequences down the road, it is well established that "fear of future possible retaliation is insufficient" to establish a materially adverse employment action. *Worrell v. Cortines*, No. 90-CV-3142 (JG), 1995 WL 1079717, at *12 (E.D.N.Y. Mar. 26, 1995).

None of that is to say that Defendants treated Nunez honorably. But Title VII's anti-retaliation provision provides protection, not from all unfair treatment — or even all retaliation — but only from retaliation "that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *accord Schultz*, No. 16-3140-cv, slip op. at 23. In this case, Nunez fails to demonstrate that she suffered any such "injury or harm" — or that

Defendants' actions could "well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted). Accordingly, Nunez's Title VII retaliation claim fails as a matter of law and must be dismissed.

## B. Supplemental Jurisdiction

Having dismissed Nunez's sole remaining federal claim, the Court must decide whether to exercise supplemental jurisdiction over her claims against Lima under the NYSHRL and NYCHRL. A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The statute does not create "a mandatory rule to be applied inflexibly in all cases." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Nevertheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*; *see also Kolari v. N. Y. Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (citing cases) (internal quotation marks omitted)).

Despite the general presumption, the Court concludes that, in the interest of judicial economy, it should exercise supplemental jurisdiction over Nunez's NYSHRL retaliation claim, as it is well established that "[t]he standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) (alterations in original). That is, given the Court's decision on Nunez's Title VII claim, it would be the height of inefficiency to defer a decision on her NYSHRL claim to a state court; instead, it is dismissed for the same reasons. By contrast, the Court declines to exercise supplemental jurisdiction over Nunez's claims under the NYCHRL, which are subject to a different standard and must be analyzed separately. *See, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (noting that NYCHRL claims "require[] an independent analysis"). In light of that, and because the law governing claims under the NYCHRL is still developing, Nunez's NYCHRL claims present questions "best left to the courts of the State of New York." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (declining to reach the question whether the plaintiff had a valid claim under the NYCHRL after dismissing his federal claim); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 92-93 (2d Cir. 2011) (affirming dismissal of the plaintiff's federal claims and declining to decide his claims under state and city law on the ground that they were "arguably governed by different legal standards" and the relevant law of New York was "still developing"); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 334 (E.D.N.Y. 2014) (declining supplemental jurisdiction over a NYCHRL claim after dismissing claims under Title VII and the NYSHRL). Accordingly, Nunez's remaining NYCHRL claims — for retaliation and sexual harassment — are dismissed without prejudice to her refiling them in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Nunez's claims are dismissed, albeit without prejudice to her refiling the NYCHRL retaliation and harassment claims in state court. The Clerk of Court is directed to terminate Docket No. 46, to close this case, and to mail a copy of this opinion to Nunez.

SO ORDERED.

Date: August 11, 2017
New York, New York

_____
JESSE M. FURMAN
United States District Judge